IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BRANDON HARTLEY-MONZO,**

        Plaintiff

        v.

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        Defendant.

No. CV 09-534-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Plaintiff Brandon Hartley-Monzo challenges the Commissioner's decision finding him not disabled under Title II of the Social Security Act and denying his application for Disability Insurance Benefits. The Court has jurisdiction under 42 U.S.C. § 405(g).

    I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). For the reasons stated below, I AFFIRM the Commissioner's decision.

## PROCEDURAL BACKGROUND

On July 19, 2005, Mr. Hartley-Monzo filed for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. AR 16.[1] After the Commissioner denied these applications, an Administrative Law Judge ("ALJ") held a hearing on August 20, 2008, and found Mr. Hartley-Monzo not disabled on October 17, 2008. AR 16, 29, 380-422. The Commissioner's decision became final when the Appeal Council denied review on March 20, 2009, AR 7-9, and Mr. Hartley-Monzo timely appealed to this Court (#2).

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see also* 20 C.F.R. §§ 404.1520, 416.920 (establishing the five-step evaluative process for DIB and SSI claims). The ALJ found that Mr. Hartley-Monzo has the following severe impairments: "amphetamine abuse, in claimed early remission; alcohol abuse, in partial remission; a history of microdiscectomy for herniated nucleus pulposus; attention deficit hyperactivity disorder (ADHD); and a learning disorder." AR 18. But the ALJ also found that none of these impairments, either separately or in combination, met or equaled a disorder listed in the Commissioner's regulations. AR 20.

After evaluating the record, the ALJ assessed Mr. Hartley-Monzo's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c)) and 416.967(c)) except he should only occasionally be required to engage in climbing, kneeling or crawling. He should not have public contact in the workplace. He works best alone and not as part of a team. He is limited to unskilled to low semi-skilled work.

---

[1] Citations to "AR" refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on October 28, 2009 (#11).

AR 21. This RFC assessment was based on consideration of Mr. Hartley-Monzo's testimony, opinions from treating, examining, and reviewing medical professionals, and statements from non-medical sources, including a case manager, a rehabilitation counselor, and Mr. Hartley-Monzo's mother. AR 18-29. Based on the testimony of a vocational expert, the ALJ concluded that Mr. Hartley-Monzo's RFC enabled his to participate in occupations that exist in significant numbers in the national economy. AR 28-29. Because the ALJ concluded that Mr. Hartley-Monzo is capable of gainful employment, the ALJ found that he was not disabled within the meaning of the Social Security Act. AR 29.

## ANALYSIS

Mr. Hartley-Monzo contends that the ALJ's decision should be reversed because the ALJ committed two legal errors in reaching his decision. First, Mr. Hartley-Monzo contends that the ALJ improperly rejected the opinion of Dr. Leslie Carter, a treating psychologist, because the ALJ failed to weigh the factors set forth in 20 C.F.R. § 404.1527. Second, Mr. Hartley-Monzo argues that the ALJ erroneously denied him a closed period of benefits based on his testimony about disabling back pain. Based on the following analysis, I hold that the ALJ did not commit legal error and the ALJ's decision is supported by substantial evidence.

### I.     Dr. Carter's Opinion

Mr. Hartley-Monzo argues that the ALJ erred by rejecting the opinion of Dr. Carter, a treating psychologist. Dr. Carter diagnosed Mr. Hartley-Monzo with a severe personality disorder sufficient to meet the criteria of mental disorder listing 12.08 and "recommended that Mr. Hartley-Monzo be granted Social Security Disability due to the seriousness of his personality and behavioral problems." AR 25, 335, 340. The ALJ gave "little weight" to this opinion. AR 25.

A treating physician's opinion is given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)). If a treating or examining physician's opinion is controverted by the opinion of another physician, however, an ALJ must cite specific, legitimate reasons for rejecting the physician's opinion, and those reasons must be based on substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The sufficiency of the ALJ's reasons for rejecting a treating or examining physician's opinion depends on the source of the contravening opinion. For example, the opinion of an examining physician may be sufficient to reject a treating physician's opinion if the examining physician's opinion is based on independent clinical findings. *Andrews*, 53 F.3d at 1041. "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered." *Orn*, 495 F.3d at 632. An ALJ may not reject the opinion of an examining or treating physician by relying exclusively on the opinion of a nonexamining physician, however. *Lester*, 81 F.3d at 830. Because Dr. Carter's opinion was contradicted by the opinion of an examining physician, Dr. Bryan, the ALJ's decision must provide specific, legitimate reasons for rejecting Dr. Carter's opinion, and those reasons must be supported by substantial evidence in the record. *See Andrews*, 53 F.3d at 1041.

The ALJ properly evaluated Dr. Carter's opinion under 20 C.F.R. § 404.1527(d), which requires an ALJ to consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the physician. The ALJ considered the length, nature, and extent of Dr. Carter's treating relationship with Mr. Hartley-Monzo, noting that "Dr. Carter reported she had been treating the

claimant since May 2008." AR 25, AR 328.

      The ALJ evaluated Dr. Carter's opinion in the context of the record as a whole, including medical source opinions. Of the many psychologists who treated or evaluated Mr. Hartley-Monzo, only Dr. Carter diagnosed Mr. Hartley-Monzo with a personality disorder. AR 25, 273, 309-10, 314, 332-33, 362. To support his conclusion that Dr. Carter's diagnosis placed disproportionate emphasis on Mr. Hartley-Monzo's diagnosis of fetal alcohol effects, the ALJ cited Dr. Bryan's comprehensive neuropsychological screening examination conducted on October 4, 2005. AR 25, 263-74. Based on "extensive psychological testing," Dr. Bryan concluded that Mr. Hartley-Monzo's cognitive ability fell "within the upper half of the Average range" and "showed no areas of cognitive deficit or of disproportionate weakness." AR 25, 272, 274. Dr. Bryan further reported that these test results were "consistent with previous intellectual assessment." AR 272. Ultimately, Dr. Bryan concluded that "[i]t is very unlikely that [fetal alcohol effects] would be focally involving emotional and behavioral problems, without any other physical or cognitive factors." AR 23, 274. Because Dr. Bryan's opinion was based on his own well-supported clinical findings, his opinion alone provides substantial evidence to support the ALJ's decision. *See Andrews*, 53 F.3d at 1041. In addition to Dr. Bryan's opinion, the ALJ relied on the November 8, 2006, opinion of another examining psychologist, Dr. Sacks. AR 23, 25. Dr. Sacks is a clinical psychologist who, like Dr. Bryan, conducted extensive psychological testing and concluded that Mr. Hartley-Monzo's intellectual abilities fell within an average range, including an average IQ and reading ability above the twelfth-grade level. AR 23, 25, 307-08. Although Dr. Sacks did not rule out the possibility that Mr. Hartley-Monzo's behavioral difficulties were linked to fetal alcohol effects, Dr. Sacks did note that "it is somewhat unusual to see Fetal Alcohol Effects in the absence of cognitive difficulties." AR 19, 23, 310.

      The ALJ also considered supportability of Dr. Carter's opinion itself. The ALJ identified

PAGE 5 - OPINION AND ORDER

discrepancies between Dr. Carter's treatment notes and Mr. Hartley-Monzo's history of alcohol and drug use, AR 25, 270, 329, 341, 404, as well as Dr. Carter's conspicuous failure to analyze whether Mr. Hartley-Monzo's substance abuse impacted his mental impairments. AR 24, 25, 329, 340-41. During Dr. Bryan's neuropsychological screening examination, Mr. Hartley-Monzo acknowledged "frequent and heavy alcohol use," marijuana use about three times per week, regular methamphetamine use for approximately two years, and intermittent cocaine use for a period longer than two years. AR 23, 270. Yet Dr. Carter's only reference to Mr. Hartley-Monzo's substance abuse was a cursory acknowledgement that "Mr. Hartley-Monzo has a history of mixed drug and alcohol use for a year or two." AR 329. Mr. Hartley-Monzo also admitted that his methamphetamine use affected his ability to interact with others, AR 24, 404, but Dr. Carter's treatment notes never addressed the relationship between Mr. Hartley-Monzo's substance abuse and his interpersonal difficulties. AR 25, 328-41. In contrast, both Dr. Bryan and Dr. Sacks concluded that Mr. Hartley-Monzo's substance abuse affected his behavioral functioning. AR 23, 273, 310. Finally, Dr. Carter wrote that "since his back surgery [Mr. Hartley-Monzo] has been clean of drugs February of 2008 [sic]," AR 25, 329, and stated in a later report that he had been both "clean and sober at least since February 2008," AR 25, 341. At the ALJ hearing, however, Mr. Hartley-Monzo testified that he regularly used methamphetamine until June 2008, and he also reported that he continued to drink alcohol on Friday nights. AR 25, 396, 403-04. These discrepancies reinforce the ALJ's conclusion that Dr. Carter's opinion was entitled to little weight.

### II.     Mr. Hartley-Monzo's Testimony

Mr. Hartley-Monzo argues that the ALJ failed to consider his testimony about the disabling effects of his back pain, and contends that the ALJ "should have at least given him a

closed period of benefits for his disabling back pain that required surgery." (Pl.'s Opening Br. (#24) 7-8.) Although Mr. Hartley-Monzo does not identify the precise dates of the closed period in which he believes he was entitled to disability benefits, I assume that the relevant period falls somewhere between July 1, 2005, when Mr. Hartley-Monzo was fired from his job at Aerotek, and February 2008, when Mr. Hartley-Monzo underwent back surgery and experienced improvement in his symptoms. AR 22, 24, 66, 411.

      I disagree that the ALJ erred in his evaluation of Mr. Hartley-Monzo's testimony. At the ALJ hearing, Mr. Hartley-Monzo testified that his back pain began to worsen in late 2005, "started to get really, really bad" in the middle of 2007, and then improved after back surgery in February 2008. AR 403, 412-13; *see also* Pl.'s Opening Br. (#24) 7. Although Mr. Hartley-Monzo claimed some physical limitations related to his back pain and described his 2005 back pain "bothersome," he also clarified that his back pain was not as severe in 2005 as it was in 2007. AR 411; *see also* AR 403, 413 (testifying that his back pain "started getting worse and worse and got to a point where I said I needed someone to get it fixed").

      As the ALJ noted during the hearing, Mr. Hartley-Monzo worked full-time as a lube technician at Jiffy Lube in fall 2007, during his worst period of back pain. AR 18, 384, 403; *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (noting that a claimant's ability to work full-time is inconsistent with disability). Mr. Hartley-Monzo testified that he started working at Jiffy Lube because he "got to the point where [he] was sick of not having any money and not being able to do anything and just sitting around." AR 403. Significantly, Mr. Hartley-Monzo testified that his employment ended when he was fired for threatening his manager with a baseball bat, but there was no indication that his employment ended because of physical limitations caused by back pain. AR 21, 384-90. In fact, Mr. Hartley-

PAGE 7 - OPINION AND ORDER

Monzo never testified about any physical pain or difficulty he experienced during his work at Jiffy Lube. AR 384-90. Because Mr. Hartley-Monzo testified that he was physically capable of working full-time when his back pain was at its worst, his testimony did not suggest that his back pain prevented him from engaging in substantial gainful activity for a continuous period of twelve months or more. *See* 42 U.S.C. § 423(d)(1)(A).

## CONCLUSION

The Commissioner's decision that Mr. Hartley-Monzo does not suffer from a disability that would entitle him to benefits is based upon correct legal standards and supported by substantial evidence. Therefore, the Commissioner's decision is AFFIRMED and Mr. Hartley-Monzo's appeal is DISMISSED.

IT IS SO ORDERED.

Dated this   31st   day of August, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge